IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHANCE HARL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-298-DES |
| ) | |
| MARTIN O'MALLEY,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff CHANCE HARL ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claims for child's insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.    Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

---

[1] Effective December 20, 2023, Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d). No further action is necessary to continue this suit by reason of 42 U.S.C. § 405(g).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform his past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.   Claimant's Background and Procedural History

In July 2020, Claimant applied for child's insurance benefits under Title II and supplemental security income benefits under Title XVI of the Act. (R. 15, 242-49). Claimant alleges he has been unable to work since December 5, 2019, due to a mental developmental delay, speech and balance impairments, reclusive behavior, anxiety, anger issues, self-harming behaviors when angry, depression, a torn ACL, and high blood pressure. (R. 15, 279). Claimant was 24 years old on the date of the ALJ's decision. (R. 28, 39). He has a high school education and no past relevant work. (R. 26, 39).

Claimant's claims for benefits were denied initially and on reconsideration, and he requested a hearing. (R. 64-149, 177). ALJ Edward M. Starr conducted an administrative hearing and issued a decision on June 13, 2022, finding Claimant not disabled. (R. 15-28, 35-61). The Appeals Council denied review on August 17, 2022 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. §§ 404.981, 416.1481. Claimant filed this appeal on October 18, 2022. (Docket No. 2).

## III.  The ALJ's Decision

In his decision, the ALJ found Claimant had not attained age 22 as of his alleged onset date of December 5, 2019. (R. 18). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since his alleged onset date. (*Id.*). At step two, the ALJ found Claimant had the severe impairments of major joint dysfunction of the left knee, hypertension, obesity, anxiety, and depression. (*Id.*). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 18-20).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with the following non-exertional limitations:

> [H]e can occasionally climb, balance, crawl, kneel, stoop, and crouch. The claimant can understand, remember, and carry out simple instructions. He can interact with coworkers, but he should not interact with the public. He can respond to supervision that is simple and direct.

(R. 20-21).

At step four, the ALJ found Claimant had no past relevant work to analyze, so he proceeded to step five. (R. 26). There, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Claimant could perform occupations existing in the national economy, including shipping and receiving weigher, laundry sorter, and laundry press operator. (R. 26-27). Accordingly, the ALJ concluded Claimant was not disabled. (R. 27-28).

## IV.  Issues Presented

Claimant asserts the ALJ erred by failing to: (1) account for all his limitations in the RFC and provide a narrative discussion explaining RFC assessment (Docket No. 14 at 13-14); (2) fully develop the record (*id.* at 10-13); (3) properly evaluate the consistency of his subjective allegations (*id.* at 7-10); and (4) present a hypothetical question to the VE that included all his limitations (*id.* at 15-16).[2]  The Court finds no error in the ALJ's decision.

## V.  Analysis

### A.  ALJ Accounted for Claimant's Limitations and Provided a Sufficient Narrative Discussion

---

[2] The Court has re-organized Claimant's arguments for clarity.

Claimant asserts the ALJ violated Social Security Ruling ("SSR") 96-8p by failing to explain how the medical and non-medical evidence supports his determination that Plaintiff could perform light work. (Docket No. 14 at 13-15).

A claimant's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week, despite her medical impairments and symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). As part of the RFC assessment, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. *Id.* at *7. Stated differently, the ALJ must explain the basis for the limitations included in the RFC, with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence" of record were considered and resolved. *Id.* Furthermore, if the RFC conflicts with a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id.*

The ALJ's decision satisfies these narrative requirements. In assessing Claimant's physical limitations, the ALJ thoroughly discussed Claimant's testimony, the Third-Party Function Report completed by Claimant's mother, and the findings of his treating, consultative, and reviewing physicians regarding Claimant's left knee impairment, hypertension, and obesity in the RFC discussion. (R. 22-24). In discussing the opinion evidence, the ALJ found "not persuasive" the state agency physicians' opinion that Claimant could perform the full range of medium work, and specifically explained that such opinion was inconsistent with Claimant's history of torn anterior cruciate ligament requiring surgery and physical rehabilitation, as well as Claimant's statements that his knee problems affected his abilities to lift, squat, stand, walk, kneel, and climb stairs. (R. 24). The ALJ also specifically explained that he limited Claimant to light work with postural

limitations to account for his hypertension, obesity, major joint dysfunction of the left knee and related pain. (R. 22). As to Claimant's mental impairments, the ALJ likewise discussed Plaintiff's testimony, Plaintiff's mother's testimony, and the findings of his treating, consultative, and reviewing physicians. (R. 22-26). The ALJ found persuasive the state agency psychologists' opinion that Claimant could perform one and two step tasks and make related judgments, concentrate for two-hour periods without routine breaks, persist for an eight-hour work day and 40-hour work week, interact with coworkers and supervisors to learn tasks and accept criticism, and adjust to repetitive work tasks and minor changes in a usually stable work situation, but could not tolerate frequent interactions with the public. (R. 24-25). The ALJ further explained that "due to his depression, anxiety, and related subjective complaints, the claimant can understand, remember, and carry out simple instructions, can occasionally interact with coworkers but should not interact with the public, and can respond to supervision that is simple and direct." (R. 22-23). Thus, the ALJ considered all the evidence related to Claimant's impairments and explained how such evidence supported the RFC. Notably, the longitudinal evidence in the record does not reflect further limitations. There is no medical source opinion regarding Claimant's impairments that identifies limitations greater than those included in the RFC assessment. The Court thus finds the ALJ considered all the evidence related to Claimant's impairments and sufficiently explained how such evidence supported the RFC assessment. *See Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000) ("the ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence."). Because Claimant points to no evidence the ALJ overlooked, his arguments amount to a request that the Court reweigh the evidence and interpret in his favor, which it cannot do. *Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of

evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for that of the Commissioner's." (citations omitted).

### B. ALJ Sufficiently Developed the Record

Claimant next contends the ALJ failed to fully develop the record as to the limitations resulting from brain damage as a result of a drug overdose during infancy. Specifically, Claimant argues remand is required so that Claimant may undergo additional IQ testing, asserting that the testing of record "may not be accurate" in light of the struggles he had in school.[3] (Docket No. 14 at 9-10).

Although the burden to prove disability is on Claimant, a social security disability hearing is non-adversarial, and the ALJ must ensure that "an adequate record is developed during the disability hearing consistent with the issues raised." *Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004) (quoting *Henrie v. U.S. Dep't of Health & Hum. Servs.,* 13 F.3d 359, 360-61 (10th Cir. 1993)). The ALJ's duty is limited to fully and fairly developing the record as to material issues. *Hawkins v. Chater,* 113 F.3d 1162, 1168 (10th Cir. 1997) (quotation omitted).

Developing the record may involve ordering consultative examinations and testing. To establish the need for a consultative examination, a claimant must "in some fashion raise the issue sought to be developed, which on its face, must be substantial." *Id.* at 1167 (citations omitted). If a claimant is represented by counsel, "the ALJ should ordinarily be entitled to rely on the claimants counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Id.* If counsel does not request a consultative examination, courts "will not impose a

---

[3] Counsel suggests that Claimant "often" required special education, resources, and tutors. However, the Court notes it was both Claimant's testimony and Claimant's mother's testimony that Claimant had an IEP and required tutoring only for math. (R. 43-44, 53). In any event, the ALJ did not ignore evidence regarding Claimant's difficulty in school. (R. 22).

duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Id.* at 1168.

Consultative examinations may be used to "secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis" where there is "an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision . . . ." 20 C.F.R. §§ 404.1519a(b), 416.919a(b). Specific examples of instances where a consultative examination may be required, include:

> (1) The additional evidence needed is not contained in the records of . . . medical sources; (2) The evidence that may have been available from . . . treating or other medical sources cannot be obtained for reasons beyond [the claimant's] control . . .; (3) Highly technical or specialized medical evidence that [the ALJ] need[s] is not available from . . . treating or other medical sources; or (4) There is an indication of a change in [the claimant's] condition that is likely to affect [his] ability to work, but the current severity of [his] impairment is not established.

*Id.; see also Hawkins,* 113 F.3d at 1166 (stating that a consultative examination is often required if there is a direct conflict in the medical evidence or the medical evidence is inconclusive and may be necessary where additional testing is required to explain a diagnosis).

Contrary to Claimant's assertion, the ALJ was not required to further develop the record by obtaining IQ testing because there was "no inconsistency or insufficiency" for additional testing to resolve. 20 C.F.R. §§ 404.1520b, 416.920b. The ALJ is not required to further develop the record if there is sufficient information for the ALJ to make a disability determination. *Cowan v. Astrue,* 552 F.3d 1182, 1187 (10th Cir. 2008).

The medical evidence of record regarding Claimant's intellectual functioning includes Dr. Paris' consultative examination findings and IQ test results, as well as numerous mental status examinations performed by various providers. (R. 430-36, 441, 515-47, 550-52, 563-66, 576-79, 589-93). Notably, every provider who addressed claimant's intellectual functioning indicated such

functioning was average or that there were no issues identified. (R. 434, 455, 468, 552, 565, 578, 591). Claimant points to no direct conflict in the medical evidence, inconclusive medical evidence, or additional tests needed to explain his diagnoses. *See Hawkins,* 113 F.3d at 1166. The ALJ had sufficient evidence to make a disability determination, and the need for additional testing is not clearly established in the record.

### C. ALJ Properly Evaluated the Consistency of Claimant's Subjective Symptoms

Claimant contends the ALJ erred in evaluating his subjective symptoms. Claimant specifically asserts the ALJ did not offer a sufficient discussion or justification for discounting Claimant's symptoms. (Docket No. 14 at 8-10).

As part of the RFC determination, the ALJ is required to consider Claimant's subjective complaints, or symptoms.[4]  20 C.F.R. §§ 404.1529(a) &(d)(4), 416.929(a) &(d)(4). The Commissioner uses a two-step process to evaluate a claimant's symptoms.[5] SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. §§ 404.1529, 416.929. First, the medical signs or laboratory findings must establish a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p at *3. The ALJ then evaluates the intensity and persistence of the claimant's symptoms and determines how such symptoms limit his ability to perform work-related activities. *Id.*

---

[4] Symptoms are defined as a claimant's "own description of [his] physical or mental impairment." 20 C.F.R. §§ 404.1502(i), 416.902(n).

[5] The Tenth Circuit characterizes this analysis as a three-step process: (1) whether the claimant established a symptom-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some symptom of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all objective and subjective evidence, the claimant's symptom *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen,* 834 F.2d 161, 163-64 (10th Cir. 1987)). The analysis under SSR 16-3p comports with this process, *Paulek v. Colvin,* 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). However, the term "credibility" is no longer used. SSR 16-3p at *2. This analysis is now termed the "consistency" analysis. *Id.* In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill,* 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding SSR 16-3p consistent with the prior approach taken by the Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

Factors the ALJ considers when evaluating a claimant's symptoms include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medications; (5) treatment aside from medication; (6) any other measures the claimant has used to relieve the symptoms; and (7) other factors concerning functional limitations and restrictions due to symptoms. *Id.* at 7-8. The ALJ's symptom findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan,* 552 F.3d at 1190 (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10. Because symptom consistency findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determination when supported by substantial evidence." *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

The Court finds no error in the ALJ's consistency analysis. The ALJ summarized Claimant's administrative hearing testimony in his decision. (R. 22). He specifically acknowledged Claimant's testimony that he has difficulty being around people; has difficulty interacting with people; has memory problems; experiences headaches and irritability as a result of stress and anxiety; experiences constant pain in his left knee; can walk less than a mile due to knee pain; can stand for three to five minutes before needing to move; and has poor balance that causes him to stumble often. (R. 22). The ALJ then found Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.* In reaching this conclusion, the ALJ

discussed a number of inconsistencies between Claimant's subjective allegations and the evidence of record, including: (1) Dr. Bolyard's findings of full extension and full flexion without pain in Claimant's left knee four months after his arthroscopic knee surgery; (2) the lack of any limitations related to Claimant's obesity; (3) the conservative treatment for Claimant's depression and anxiety; (4) the effectiveness of medication in improving Claimant's symptoms; (5) Dr. Sudduth's normal consultative examination findings; and (6) Dr. Paris' normal consultative examination findings. (R. 23-26). The ALJ thus linked his consistency findings to the evidence and provided clear and specific reasons for his determination in compliance with the directives of *Cowan* and SSR 16-3p.

### D.    ALJ's Hypothetical Question was Proper

Finally, Claimant contends the ALJ erred in relying on VE testimony in response to a hypothetical question that matched the RFC, rather than including the additional limitations he claims. (R. 15-16). For the reasons set forth in Part V.A. above, the ALJ's RFC assessment was supported by substantial evidence and was therefore proper. Claimant's argument regarding the hypothetical question posed to the VE fails because it rests on alleged errors in the RFC assessment the Court has already rejected. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected plaintiff's challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

### VI.    Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this 23rd day of January, 2024.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE